*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BRYANT/STYLES, Minors.

UNPUBLISHED
July 27, 2023

No. 364358
Livingston Circuit Court
Family Division
LC No. 20-016177-NA

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the order of the trial court terminating her parental rights to her minor children, EB and SS, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

According to the initial petition filed by the Michigan Department of Health and Human Services (MDHHS), respondent, her children, and her then-boyfriend moved from hotel-to-hotel throughout Livingston County.[1] It alleged that in either early or mid-August 2020, she checked into a Brighton hotel with her boyfriend. According to the petition, she and her boyfriend regularly used methamphetamine. And, at times, they used it and heroin in front of her children. It also alleged that she permitted her boyfriend to care for EB and SS despite the previous removal of his own children by Children's Protective Services (CPS). According to the petition, a hotel worker went to respondent's hotel room and found it "trashed" and "completely dirty," including finding several of respondent's prescription pill bottles on the bathroom countertop, "easily accessible to the minor children . . . ." MDHHS also alleged that the children were found running around the

---

[1] Respondent was, however, married at the time. Her husband has a child, BL, who is the step-brother of EB and SS. EB and SS's biological father is deceased, and neither he nor respondent's husband were respondents in this case. Respondent also has another minor child, DM, who was initially included in the petition but was eventually removed because his biological father obtained full custody of him and respondent was not allowed to visit DM.

hotel lobby and hallways unsupervised, and that EB (nine years old at the time) was watching SS and her step-brother, BL, for respondent.

In late August 2020, Fowlerville police arrested respondent and her boyfriend for shoplifting. SS was with respondent at the time. According to the petition, police searched their vehicle and found a backpack "full of drug paraphernalia, loaded needles[,] and methamphetamine." A day after the shoplifting incident, MDHHS filed its petition seeking removal of EB and SS from respondent's care and requesting that the trial court exercise jurisdiction over the children. The referee authorized the petition, the children were removed from respondent's care, and respondent was granted supervised parenting time.

In mid-February 2021, the trial court held a hearing to determine whether it should exercise jurisdiction over the children. Testimony from a CPS investigator, Thomas Brideau, detailed the allegations of respondent's homelessness, substance abuse, and erratic behavior. He also recounted the shoplifting and methamphetamine allegations against respondent. Brideau further expressed concerns about respondent's boyfriend caring for her children because of his history with CPS and of substance abuse. He also detailed respondent's several substantiated CPS cases dating back to 2014, which largely stemmed from her substance abuse issues. At the end of the hearing, the trial court exercised jurisdiction over the children.

In early March 2021, the trial court adopted MDHHS's case service plan, ordering her to participate in and benefit from parenting classes, a parenting coach program, individual therapy, group therapy, and substance abuse treatment. The court also ordered respondent to complete psychosocial and psychiatric evaluations and follow the recommendations, submit to random drug screenings, maintain a legal source of income and suitable housing, and regularly visit the children.

Respondent completed her mental health evaluations and parenting classes early on in the case. She also obtained and maintained a legal source of income, though respondent's caseworker, Dianee Green, struggled to verify respondent's source of income because respondent frequently changed jobs and did not provide paystubs as proof of income. Respondent regularly attended parenting time with the children and exhibited a strong bond with the children.

But she failed to comply with other aspects of her service plan. Respondent failed to participate in substance abuse treatment programs, individual therapy, group therapy, or inpatient substance abuse treatment. She also failed to comply with the required drug screens and had not obtained stable housing.

In June 2022, MDHHS—at the trial court's direction—filed a supplemental petition requesting termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). At the termination hearing, respondent admitted to a substance abuse problem dating back at least a decade. Green testified that respondent had not completed any of her referred substance abuse treatments and did not comply with her required drug screens until January 2022. Even then, Green indicated, respondent tested positive for codeine and alcohol on at least two occasions.[2]

---

[2] Under the case service plan, respondent was not to "use drugs, alcohol, medical marijuana, recreational marijuana, or non-prescribed medication."

Green also testified that respondent continued to take Adderall despite being diagnosed with an amphetamine use disorder, and both Green and respondent testified that respondent's doctor had previously suspended her Adderall prescription for testing positive for methamphetamine.

Regarding respondent's mental and behavioral health issues, Green testified that she referred respondent to several facilities across Michigan to address these issues, but respondent did not complete treatment with any of them. Respondent testified that she began consistently attending group counseling in February 2022, and both respondent and Green indicated respondent began consistently attending individual therapy in June 2022. Respondent admitted that she never obtained suitable housing and that she was still looking for housing at the time of the termination hearing. Green and the court-appointed special advocate, Karen Hubbard, opined that termination was in the children's best interests because the children were well-adjusted to their placement with their maternal grandparents, respondent largely failed to comply with and benefit from her case service plan, and placing the children with respondent would subject them to significant instability.

After the hearing, the referee, in a detailed opinion, recommended termination of respondent's parental rights. The referee found clear and convincing evidence warranting termination under MCL 712A.19b(3)(c)(*i*), (g), and (j). She relied heavily on respondent's substance abuse issues, and her failure to comply with various aspects of her case service plan, including failing to complete substance abuse and mental health services, and to obtain and maintain suitable housing. The referee also concluded that, for many of the same reasons, termination was in the best interests of EB and SS. She acknowledged the bond between respondent and her children, but again noted respondent's substance abuse issues and failure to comply with the case service plan. The referee further acknowledged the children's placement with their maternal grandparents, but concluded that the other best-interest factors outweighed the relative placement. She therefore found termination in the best interests of EB and SS. The trial court adopted the referee's recommendations and entered an order terminating respondent's parental rights. This appeal followed.

## II. STANDARDS OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). We review for clear error the trial court's decision that statutory grounds for termination have been proven by clear and convincing evidence, as well as its determination that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. "Best interests are determined on the basis of the preponderance of the evidence." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted). "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014).

## III. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred by finding clear and convincing evidence that termination was appropriate under MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree.

A court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if it finds clear and convincing evidence of the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination is appropriate under MCL 712A.19b(c)(*i*) when the "totality of the evidence" supports a finding that the respondent-parent did not "accomplish[] any meaningful change in the conditions" that led to the adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). The court must also find that "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). What constitutes a "reasonable time" requires consideration of how long the parent will take to improve the conditions and how long the children can wait for the improvements to occur. See *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

At the time of termination, more than 182 days had elapsed since the issuance of the initial dispositional order. The court took jurisdiction over EB and SS on February 11, 2021, MDHHS filed its supplemental petition seeking termination on June 2, 2022, the referee held the termination hearing on August 15, 2022, and respondent's parental rights were terminated on December 1, 2022. The conditions that led to adjudication were primarily respondent's substance abuse, untreated mental health issues, and unstable housing. Respondent failed to make any meaningful progress toward rectifying these conditions.

The evidence supported a finding that respondent failed to rectify her substance abuse issues. Respondent admitted to a 10- to 15-year substance abuse problem. Though, according to Green, respondent completed a substance abuse assessment in May 2021, respondent did not adhere to the recommendations after the assessment, including an inpatient substance abuse program and substance abuse counseling. In February 2021, Green referred respondent to a treatment facility for therapy services. Respondent, however, did not engage in services there until a few months before the termination hearing. Green also referred respondent to several substance abuse treatment facilities, but respondent did not complete services at any of them. Although respondent testified that she regularly attended Narcotics Anonymous, Green indicated she was unable to verify respondent's attendance.

Green also testified that, despite being diagnosed with an amphetamine use disorder, respondent continued to take Adderall. Both Green and respondent testified that respondent's doctor previously suspended respondent's Adderall prescription because she tested positive for methamphetamine. Between March 8, 2021, and July 1, 2021, respondent was scheduled for 32

drug screens, but she only completed five.[3]  Under her case service plan, respondent had to complete random drug screens, but she did not consistently do so until January 2022.  Green also noted that respondent had been completing makeup drug screens rather than testing "on a random basis" as intended.  Green was concerned this was done to "hide substance abuse[.]"  Respondent also tested positive for codeine and alcohol in March 2022 and April 2022, both of which she was not permitted to have.  And, at the time of the termination hearing, respondent had not successfully completed any substance abuse program.  We note, however, that the trial court entered the termination order almost four months after the termination hearing.  Respondent has not raised an issue with this temporal gap or whether the trial court had to make additional findings and conclusions to reflect any change between the termination hearing and the trial court's order.

The evidence also supported a finding that respondent failed to address her mental and behavioral health issues.  Green testified that respondent completed a psychological assessment in May 2021, and was ordered to attend individual and group counseling.  Respondent began individual counseling with one treatment facility in May 2021 but stopped attending that same month because, according to Green, she felt uncomfortable there.  The treatment facility tried to accommodate respondent by providing her a different therapist, but respondent still refused to attend.  Although she attended three group counseling sessions at the treatment facility in 2020, respondent did not attend any individual counseling sessions beyond the initial assessment.  Respondent also never participated in therapy services with at least seven other mental health facilities, despite referrals to those facilities from Green.  Respondent did not consistently attend group counseling sessions until February 2022 or weekly individual counseling sessions until approximately two months before the termination hearing.  Even so, at the time of the termination hearing in mid-August 2022, respondent still had not successfully completed any counseling program.

The evidence also demonstrated that respondent failed to maintain stable housing throughout this case, as required by her service plan.  Respondent acknowledged that stable housing was a barrier to reunification "[t]he whole time."  According to Green, respondent, throughout much of this case, either lived with a friend, with her husband's family, or in a hotel.  Although at some point respondent lived in a home in Mason, Michigan, there was some confusion about whether she owned or rented the home.  At the time of the termination hearing, however, respondent lived in Brighton with her in-laws because her house in Mason "didn't work out . . . ."  Regardless, Green opined that the Mason house was unsuitable for the children.  Although Green did not fully assess the in-laws' home, she "saw the girls' bedroom," and opined that it was not suitable for the children to live in permanently.  Respondent acknowledged that her time at her in-laws' house was only temporary.  And at the time of the termination hearing, she had found but not secured a potentially suitable home that she was still saving toward.

The record also supports the trial court's finding that there was no reasonable likelihood that respondent would rectify the conditions that led to adjudication within a reasonable time.  See MCL 712A.19b(3)(c)(*i*).  Green testified that respondent was largely noncompliant with the case

---

[3] According to Green, the five tests respondent completed returned positive results for medication prescribed to respondent.

service plan for nearly a year. Respondent did not begin consistently completing drug screens or makeup drug screens until January 2022, and, as noted earlier, did not begin attending individual therapy until approximately June 2022. At the time of the termination hearing, respondent still had not successfully completed counseling or a substance abuse program. Respondent also did not begin participating in or complying with her services until May or June 2022, and Green did not believe that respondent was benefiting from these services "[b]ecause she just started . . . ." At the time of termination, the children had been out of respondent's care for over two years. Green testified that respondent received various referrals to assist her in overcoming the barriers in her case, including substance abuse treatment, mental health treatment, and housing assistance. Despite these referrals, respondent remained largely uninvolved until only a few months before the termination hearing. Given respondent's history, Green did not believe that respondent would participate in services and rectify her barriers if given additional time. The trial court therefore did not clearly err by concluding that there was no reasonable likelihood that respondent would rectify the conditions that led to adjudication within a reasonable time. See MCL 712A.19b(3)(c)(*i*).[4]

## IV. BEST INTERESTS

Respondent also argues that the trial court clearly erred by finding that termination of respondent's parental rights was in the children's best interests. We disagree.

In termination proceedings, the trial court must weigh all the evidence, within the entire record, to determine the children's best interests. See *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000); *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "The focus at the best-interest stage has always been on the child, not the parent." *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks, citation, and brackets omitted). The trial court must consider each child individually and assess the best interests of each child separately, unless the children are similarly situated. *In re TK*, 306 Mich App at 711 (citation omitted).

"To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 714. The trial court must also "explicitly address each child's placement with relatives at the time of the termination hearing." *In re Olive/Metts Minors*, 297 Mich App at 44. A court's failure to address the child's placement with a relative is clear error requiring the best-interests finding to be vacated. *Id.* A child's placement with relatives weighs against termination. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). The trial court must state on the record or in writing its findings of fact and

---

[4] Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). We therefore need not address respondent's arguments regarding MCL 712A.19b(3)(g) and (j).

conclusions of law regarding its best-interest determination. See MCL 712A.19b(1); MCR 3.977(I)(1).

Respondent emphasizes her strong bond with her children, and the parties do not dispute the existence or strength of this bond. The bond between a parent and their child is, however, only one of the many factors courts must consider when determining whether termination is in a child's best interests. See *In re White*, 303 Mich App at 713-714 (providing the several best-interest factors). Although the trial court considered the bond between respondent and her children, it nonetheless found termination was in the children's best interests. It concluded that the evidence showed that EB and SS would be at substantial risk of harm if returned to respondent's home because of her "substance abuse, untreated mental health, and lack of appropriate housing." The record supports this conclusion.

Respondent acknowledged her 10- to 15-year substance abuse problem. At the time of the termination hearing, respondent still had not successfully completed a substance abuse program, despite referrals to substance abuse treatment centers by Green. Respondent did not consistently complete her required drug screens until January 2022, and even then, she tested positive for substances and frequently took makeup drug screens rather than randomly scheduled ones. As noted earlier, Green expressed a concern that respondent took makeup tests to "hide substance abuse[.]" Green also referred respondent to several therapy centers but respondent never completed counseling at any of them. Respondent did not consistently attend individual counseling to address her mental health until June 2022, and she had not successfully completed any counseling at the time of the termination hearing.

Regarding EB and SS, Green and Hubbard testified that the children were well-adjusted to their placement with their maternal grandparents, and that the placement provided them consistency and stability. Green and Hubbard opined that returning EB and SS to respondent's care would subject them to significant instability, most notably because respondent had not yet found adequate housing, nor completed her substance abuse and mental health services. Hubbard acknowledged that the children clearly loved respondent but were often "let down" by some of her promises, particularly related to housing. We are not definitely and firmly convinced that the trial court erred in finding that termination was in the children's best interests.

Respondent argues that the children's relative placement weighed against termination. "[T]he fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests," and relative placement typically weighs against termination. *In re Olive/Metts Minors*, 297 Mich App at 43. The trial court considered relative placement in its findings, concluding that although the relative placement met the children's needs, the remaining factors vastly outweighed the relative placement and supported termination. In so concluding, the court considered respondent's substance abuse, untreated mental health, emotional instability, unstable housing, criminality, lack of compliance with and benefit from her case service plan, and the children's need for permanency. The record supports this conclusion and it was therefore not clearly erroneous.

Respondent also asserts that the trial court failed to mention "guardianship as a possible resolution to a case where there was no apparent adoptive home" and never considered "a permanency plan other than adoption . . . ." The record belies respondent's assertion.

A guardian is typically appointed "in an effort to avoid termination of parental rights." *In re TK*, 306 Mich App at 705. A guardianship may be considered only if one of two conditions is met: either MDHHS "must demonstrate 'under [MCL 712A.19a(8)] that initiating the termination of parental rights to the child is clearly not in the child's best interests' or the court must 'not order the agency to initiate termination' proceedings under MCL 712A.19a(8)." *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019), quoting MCL 712A.19a(9). See *In re COH*, 495 Mich 184, 197; 848 NW2d 107 (2014) (referencing the same language as it existed under MCL 712A.19a(7) which was subsequently amended by 2016 PA 497, effective April 6, 2017, and moved to MCL 712A.19a(9)). Even if one of these conditions is met, a trial court may order a guardianship only if it "determines that [doing so] is in the child's best interests[.]" MCL 712A.19a(9)(c).

Neither of the conditions under MCL 712A.19a(9) was met here. MDHHS determined that termination was in the children's best interests, and the trial court ordered MDHHS to initiate the termination proceedings. Further, nothing in the record indicates that any party requested a guardianship or that anyone would have agreed to such an arrangement. Contrary to respondent's claims, the referee appears to have at least considered alternatives such as relative placement and a brief consideration of the viability of guardianship. And although the maternal grandparents—the children's placement at the time of termination—were unwilling to adopt EB and SS, MDHHS's petition indicated that other family members expressed interest in doing so. The trial court also addressed the possibility of adoption and a guardianship. It noted the apparent interest of other family members in adopting the children and concluded that "[p]lacing either child in a guardianship to see if [respondent] is ever able to rectify her barriers to safe parenting" was not in the children's best interests because it "would only prove to prolong their sense of instability." And, as discussed earlier, the trial court found that termination was in the children's best interests. The trial court, therefore, need not have established a guardianship for the children in lieu of termination. Given respondent's unresolved issues with substance abuse, mental and behavioral health, and stable housing, and the children's young ages and need for permanency and stability, the trial court did not clearly err by finding that it was in the children's best interests to terminate respondent's parental rights.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Noah P. Hood